# Case No. 14,464a.

## UNITED STATES v. The ARCOLA.[1]

District Court, D. Maryland. Oct. Term, 1861.

PRIZE—RESIDENCE OF OWNER—SHIP'S PAPERS—AT WHAT TIME BELLIGERENT RIGHTS COMMENCE—ACTUAL HOSTILITIES—RIGHTS OF LOYAL MORTGAGEE—RECORDING OF MORTGAGE.

[1. The uncontradicted testimony of the owner of a captured vessel that he lives in Virginia, together with a showing that he had, in a mortgage of the vesse., stated that he was of that state. is sufficient to show that he was a citizen thereof at the time of the capture of the vessel.]

[2. The existence of a state of war such as would justify the capture of a vessel belonging to a resident of Virginia. dated from the beginning of hostilities, the closing of the federal courts, and the opposition to the execution of the laws of the Union by combinations too powerful to be suppressed by the ordinary course of judicial proceedings, such as justified the exercise of belligerent rights by the government, and not from the passage or adoption of the ordinance of secession of Virginia ]

[3. The interest of a loyal citizen in a vessel, based on a mortgage made to him by the owner before the outbreak of hostilities. and regularly recorded under the act of congress, and indorsed on the certificate of enrollment, should not be condemned because the interest of the mortgagor, a citizen of Virginia. is subject to condemnation.]

In admiralty.

Mr. Addison, for the United States.
A. Sterrett Ridgely, for claimants.

GILES, District Judge. The facts of this case as shown by the schooner papers and answers to the interrogatories in preparatorio are: That she was captured on the 23d of May last, in Hampton Roads, as a prize of war, and sent into this port for adjudication. That she was owned by John Lewis, who had purchased her in the city of New York on the 28th of March last for $2,500, from Messrs. Johnson & Higgins, of that city. That no part of the purchase money was paid by said Lewis. who, on the day of his purchase, executed a mortgage of the schooner to the said Johnson & Higgins to secure the payment of the said purchase money. The said mortgage was duly recorded in the New York customhouse, and a memorandum of it likewise indorsed on the certificate of the enrollment of the said schooner. That said Lewis, after said purchase, proceeded with the said schooner to Norfolk, where he enrolled her on the 4th of April last. and in which enrollment he states himself to be of Norfolk, Virginia. On the back of this enrollment there was also indorsed the memorandum of the mortgage which had been inscribed on the enrollment made in New York. Said Lewis was also the captain of said schooner, and as such proceeded in her on a voyage to Charleston. and from thence to this port, where she took in a cargo for New York, and was proceeding to that port when she was captured. Of all the witnesses examined, Lewis is the

---

[1] [Not previously reported.]

only one that speaks of his (Lewis') residence, and he swears that he lives in Norfolk, Virginia, and has lived there four or five years, and that the said schooner belonged to Norfolk. It is true, and in the test affidavits to the claim and answer the claimants swear, that John Lewis had no residence in Norfolk; that he was only there for a temporary purpose; that his family resided in Brooklyn, which they considered the place of his residence. But this case, like all prize cases, is first heard on the vessel's papers and answers to the interrogatories, and, unless from these the character of the property is doubtful, the court looks to no other further proof. For this rule of practice, see the case of The Dos Hernanos, 2 Wheat. [15 U. S.] 76; 1 Wheat. [14 U. S.] 499, Append.; 1 C. Rob. Adm. 390, Append.; The Anna, 1 C. Rob. Adm. 331; The Haabet. 6 C. Rob. Adm. 55; and The Amiable Isabella, 6 Wheat. [19 U. S.] 1. I can have no doubt as to the residence of John Lewis at the time of the capture. He swears that he lives in Norfolk, and no witness contradicts him. Even if there had been any ·doubt upon the subject, and the court had looked out of the ship's papers and answers to interrogatories, then there is enough to prove the same fact in the bill of sale of said schooner and mortgage executed in New York in March last. In both these papers Lewis is ·stated to be of "Norfolk, in Virginia." Now a decree of condemnation is resisted in this case on three grounds: (1) That Lewis was not a citizen of Virginia at the time of the capture; (2) that as, at the date of the capture. Virginia had not adopted the ordinances of secession by a vote of her people, there was no such state of war as justified the capture; and (3) that the interest of the mortgagees, Johnson & Higgins, who are residents of the city of New York, cannot be condemned.

I have disposed of the first ground by what I have said in reference to the evidence. I consider the second ground covered by my opinion in the case of The F. W. Johnson [Case No. 15,179]. It was the existence of hostilities. the closing of the federal courts, and the opposition to the execution of the laws of the Union by combinations too powerful to be suppressed by the ordinary course of judicial proceedings, which justified the exercise of belligerent rights by the government, and not the passage or adoption of the ordinance of secession of Virginia. Now, as to the third ground. can the interest of these mortgages be condemned? The district attorney contends that no such interest can be regarded by a prize court. but, if the mortgagor be hostile, the property must be condemned. To sustain this position he has referred the court to the cases of The Tobago. 5 C. Rob. Adm. 223; The Marianna, 6 C. Rob Adm. 25; The Francis, 8 Cranch [12 U. S.] 418; and Bolchos v. Darrel [Case No. 1.607]. Now, the case of Bolchos v. Darrel [supra],

last referred to, was decided on the ground that by the 14th article of the treaty with France the property of friends found on board the vessels of an enemy should be forfeited. It was the case ·of certain slaves mortgaged by a Spanish subject, and found on board the vessel of the mortgagor when she was captured. The learned admiralty judge who decided this case said: "It is certain that the law of nations would adjudge neutral property thus circumstanced to be restored to its neutral owner." The case of The Tobago was the case of a bottomry bond; The Marianna was the case of a lien asserted to be retained by an American proprietor on a vessel sold by him to a Spanisn merchant, but which did not appear by any written paper of any kind; and The Francis was the case of a lien claimed for advances made in consideration of the shipment of the goods sought to be condemned. Now, these were all secret liens, of which the captor could learn nothing when they made the capture, and depending for their existence upon the different laws of different countries. The difficulties which the examination of such claims would impose upon the prize court in deciding upon them have excluded such claims from the consideration of those courts. But do these considerations apply to the case of a mortgage, regularly recorded, under an act of congress of 29th of July, 1850, and indorsed on the certificate of enrollment? Our act of congress does not require the mortgage or memorandum thereof to be indorsed on the vessel's register or enrollment, as the statute of 6 Geo. IV., c. 110, and the subsequent British statutes, do. But it was done in this case, and it is a practice that should be followed in similar cases. It notifies the captors immediately on inspection of the ship's papers that there is an interest in the vessel vested in parties friendly to their government. and puts them to their· election whether, under such circumstances. they will proceed in the capture. Now, by the mortgage of a chattel, something more thau a mere lien passes to the mortgagee It is (as the superior court say in Conrad v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 441) "a transfer of the property itself, as security for the debt." The legal title to the property has passed to the mortgagee. As further authorities to sustain this position. I refer to Thelussion v. Smith, 2 Wheat. [15 U. S.] 396. and U. S. v. Hooe, 3 Cranch [7 U. S.] 73; and also to the case of Jamieson v. Bruce, 6 Gill & J. 74. in which Archer, J., delivering the opinion of the court of appeals of Maryland. says: "Upon the execution of the mortgage. the legal estate becomes immediately vested in the mortgagee, and the right of possession follows as a consequence." And again he remarks: "This right of possession is always subject to any agreements which may be made in relation thereto, and mortgages do generally contain clauses giving the right of possession as against the mortgagee until

forfeiture; but where the parties are entirely silent as it regards the possession, the right thereto follows the legal estate, and rests in the mortgagee." And this was a case of a mortgage of personal property. In the mortgage exhibited in this case there is no express covenant that Lewis is to retain possession of the schooner, yet such may be inferred to have been the agreement, from the provision that when thirty days shall have elapsed after a demand for the payment of the mortgage debt the mortgagees may take possession and sell said schooner for satisfaction of the debt. But this does not change the character of the conveyance, as passing the title to the property, but only postpones the possession to a future day. Now, is there any principle in the law of nations which requires a prize court to condemn such an interest, because the party who created it may subsequently become an enemy? When the conveyance was made both parties were citizens acknowledging their allegiance to the United States, and the conveyance was duly recorded in pursuance of the law to which I have referred. Is there any principle of justice which requires the courts of the captors to condemn the interest of loyal citizens because it may be connected with the property of those who are hostile to the government? I know of none. It would be a very harsh one if it existed. I will therefore sign a decree that the said vessel be sold by the marshal, and that the proceeds of sale, after deducting the costs of sale and the costs of the case, be paid over by the marshal to the mortgagees or their proctor, in satisfaction of their said mortgage claim or on account of the same, if there be not sufficient to pay the whole debt; and, if there be more than sufficient to pay said claim, the marshal will deposit the balance in the registry of this court to await its further order, or, if the proctors prefer it, I will decree a restitution of the vessel to the claimants, the mortgagees, upon their paying the costs of this case, as I am satisfied that the vessel will not sell for enough to pay the costs and the mortgage claim.